|                              |   |                              |
|------------------------------|---|------------------------------|
|                              | ) | United States District Court |
| Andrew U. D. Straw           | ) | Northern District of Indiana |
| Plaintiff,                   | ) |                              |
|                              | ) | Case No.: 1:14-cv-05194      |
| v.                           | ) |                              |
| American Bar Association,    | ) | Jury Trial Not Demanded      |
| Defendant.                   | ) |                              |

## RESPONSE TO MOTION TO DISMISS

1. I, plaintiff Andrew U. D. Straw, having reviewed the motion to dismiss of defendant American Bar Association, respond as follows:

## STATEMENT

2. First, I have standing. I am a person with disabilities, both physical and mental, and the ABA Commission on Disability Rights has honored me with being its "Spotlight" attorney with disabilities for January of 2014. This point should not be in dispute.

3. I have standing as a person affected by the ABA's actions. I have explained that I am seeking entrance to a doctoral program to study discrimination in the legal profession, from pre-law to chief justice and all levels in between. The barriers placed before lawyers with disabilities are sometimes surreptitious, but often are quite obvious and brazen. Information barriers are covered under the ADA and the Rehabilitation Act.

4. When I worked at the Indiana Supreme Court, I obtained my physical disabilities from a 6-car crash on the way to work at that Court. After that happened, I experienced discrimination there.

1

When I revealed my bipolar disorder in my Indiana bar application while working there, the discrimination kicked into high gear. When I asked for review of how I was treated by the current Indiana Supreme Court, I received retaliation from the Director of Employment Law.

5. When a person has been immersed in discrimination for a long time, you don't offer them another glass of it, and that is what the ABA is doing here.

6. In passing the Americans with Disabilities Act and reconfirming it unanimously in 2008, Congress meant to eliminate discrimination on the basis of disability: "It is the purpose of this chapter (1) to provide a clear and **comprehensive national mandate** for the **elimination of discrimination** against individuals with disabilities…" 42 U.S.C. § 12101(b).

7. Congress has chastised and corrected the United States Supreme Court for narrowly construing this Act. ADA Amendments Act of 2008 reversed several High Court decisions in no uncertain terms, unanimously in both houses.

8. "Elimination of discrimination" does not mean that those who discriminate get to cart their wrongdoing to the closest hole and hide it until the coast is clear.

9. The American Bar Association sells its accreditation service to all ABA-accredited law schools, and states overwhelmingly require ABA accreditation in order for a bar applicant even to apply.

10. Please note the schedule of one-time and annual fees that law schools must pay in order to have that privileged status. (Exhibit 1)

11. The ABA does not sell that service for the benefit of the law school, but for the benefit of the students who may go there.

12. The ABA demands that law schools provide the information on the Form 509. This information is then mandated to appear on all accredited law schools' webpages.

13. Providing that form on the web is for the benefit of *all students* who may attend that university. Law students have already matriculated, although they may find the information interesting. An S.J.D. student such as I hope to be will also find it useful in *making decisions*. 29 U.S.C. § 701(a)

14. 29 U.S.C. § 701(a) Findings
Congress finds that—

(1) millions of Americans have one or more physical or mental disabilities and the number of Americans with such disabilities is increasing;

(2) individuals with disabilities constitute *one of the most disadvantaged groups in society*;

(3) disability is a natural part of the human experience and in no way diminishes the right of individuals to—

(A) live independently;

(B) enjoy self-determination;

(C) *make choices*;

(D) contribute to society;

(E) *pursue meaningful careers*; and

(F) *enjoy full inclusion and integration* in the economic, political, social, cultural, and educational mainstream of American society;

15. It is for people who have not yet applied that the information is most useful. The information for women and minority students is there to help them make decisions.

16. The law schools pay for the accreditation and they do so for upcoming students as well as ones about to take the bar exam. Students pay for those fees through their tuition.

17. In short, law schools pay for accreditation, and accreditation includes being mandated to fill out the Form 509 and present it to the world in the same manner as all of the other law schools.

18. The Form 509 is an informational tool and was *purchased* for the benefit of students.

19. The ABA is a public accommodation. It provides this form to students, and the students pay for it indirectly through their law schools, which pay the accreditation fees.

20. The ABA must provide the Form 509 in a manner that does not discriminate, not even a little bit.

21. "[C]lear and comprehensive national mandate for the **elimination of discrimination** against individuals with disabilities" is the standard to follow.

22. We know that the Law School Admission Council rigged the Law School Admission Test against students with disabilities. That was announced in May of 2014 by the Department of Justice. Every one of the ABA's accredited schools are members of that Council.

23. It is no coincidence that such a Council would "flag" the scores of disabled students and provide these flags to the law schools when the ABA itself is making such scant effort to even keep track of the number of disabled students.

24. It **is** a scheme meant to keep disabled students out.

25. The ABA's GOAL-III report shows that the ABA has very few people with disabilities in its leadership. That fact alone,

documented by its own Commission on Disability Rights, would warrant an investigation by the Department of Education.

26. If the ABA want to continue accrediting law schools, it needs to erase every remaining trace of disability-based discrimination from its mandatory form, not to mention its rules and anywhere else this association provides services to the public. Otherwise, the Department of Education has every reason to audit the ABA in its disability access practices.

27. If I can come before this Honorable Court and point to the form, show the obvious deficiency, no excuses should be allowed. This should never have had to come before the Court, but for the resistance that the ABA (and the law schools, initially) erected.

28. Instead of saying no, the ABA should immediately fix this Form 509 and embrace the goal of Congress. That goal bears repeating again: "clear and comprehensive national mandate for the **elimination of discrimination** against individuals with disabilities." If the ABA is incapable of doing that, it needs to be mandated to do the right thing now, and the resistance should be noted to the Department of Education, which seems to be misplacing its trust in this area.

29. The ABA, by counsel, states that it is properly law schools that have obligations under the Americans with Disabilities Act. I agree that the law schools do have obligations, but the ABA violates either Title III or Title II or Title V of the ADA, or the implementing regulations, or the Rehabilitation Act, or some combination of them when it refuses to provide this data.

30. Res ipsa loquitur. The data omitted is necessary to prevent future discrimination that has pervaded the legal profession just like the rest of society.

31. The data is a service provided to students. It was purchased with the money of students. It was purchased with my tuition when I was a law student at Indiana University-Maurer School of Law. I have paid for this form and I demand that the vestiges of disability discrimination be removed. Not only have I paid for the form as a law student, but my goal of removing all disability discrimination in the profession—a goal I share with Congress—is being hindered by the nonsensical argument that somehow I am not affected. I have run the gauntlet of discrimination.

32. I would draw the court's attention to 28 U.S.C. 35.130(b)(1)(v):

    A public entity, in providing any aid, benefit, or service, may not, **directly or through contractual, licensing, or other arrangements**, on the basis of disability…[a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing **any aid**, benefit, or service to beneficiaries of the public entity's program.

    28 U.S.C. 35.130(b)(1)(vii):
    Otherwise limit a qualified individual with a disability in the enjoyment of any **right, privilege, advantage, or opportunity enjoyed by others** receiving the **aid**, benefit, or service.

33. The ABA states that it is not covered under Title III, but is that accurate? The ABA provides a service to the public in the form of the data that it forces all law schools to provide on its Form 509. This form is not just for internal consumption. The Form 509 is posted on every law school's website, whether that school is public or private in nature.

34. The form's entire purpose is to disclose in order to facilitate comparison.

35. The ABA, through mandatory disclosures, helps women and minorities to know the numbers of each of these groups in entering law school classes. These students can compare schools and see which is more welcoming to minority students or women.

36. Because the ABA provides the information I seek to women and minorities, it "Otherwise limit[s] a qualified individual with a disability in the enjoyment of any **right, privilege, advantage, or opportunity enjoyed by others** receiving the aid, benefit, or service."

37. I have the right to that information. They provide it to other people who belong to different groups.

38. The ABA provides an informative service to potential customers of these law schools, but it does not provide that same service to people with disabilities. That's called discrimination and it must stop.

39. Hiding behind the law schools and saying the form is their responsibility is specious. Law schools have pointed back o the ABA, and in the end the fingers point and the "national mandate" to eliminate discrimination against people with disabilities dissolves. Clever, but wrong morally and on the law.

40. The ABA admits that it has been entrusted with regulation of law schools by the Department of Education. The ABA has a monopoly over that service. The ABA sells that service under a special grant of power from the federal government. It must do so in line with the ADA and the Rehabilitation Act of 1973, but it violates the law on Form 509.

41. I would assert that the ABA's monopoly grant by the U.S. Department of Education obliterates any competition from offering a different *mandatory* Form 509. The ABA provides this form and the law schools refuse to provide anything beyond what is on the form. So, *the ABA provides the ceiling*. It must be responsible where it places that ceiling. It must be lawful.

42. Given the lack of any competition, it is exceptionally important that the ABA be required to force law schools to provide the information that *they* are required by law to provide students.

43. "No private or public entity shall coerce, intimidate, threaten, or interfere with **<u>any</u>** individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having ***aided or encouraged any other individual*** in the exercise or enjoyment of, any right granted or protected by the Act or this part." 28 C.F.R. § 35.134(b)

44. I have been fighting discrimination my entire life, including when I was poisoned as a child by the water at Camp LeJeune Naval Hospital, where I was born. This caused both the migraines and the bipolar and severe allergies. Discrimination at the Indiana Supreme Court was the unholy cherry on top of it all.

45. The kind of discrimination I have found pervading the legal system motivates me to push for openings for other law students with disabilities. That is why I joined the National Association of Law Students with Disabilities.

46. I have the right to study and get my doctoral degree in law somewhere where I can know the degree of previous discrimination. *I paid for that right.* Other students have the same right, and this is for them too.

47. The ABA is holding this door shut in a way that it has not been doing for women and minority students. It is nonsense to

8

say that women and minorities can be "exposed," but people with disabilities may not. One more example of different standards: "smothering overprotectiveness" that discriminates and excludes.

48. We know that the entrance exam, the LSAC, was used in a discriminating way by all ABA-accredited law schools. The Department of Justice went after LSAC in 2014. That alone should be enough to provide the data. We need to know the level of damage now, and whether it heals.

49. We know that state law licensing agencies discriminate, especially against students like me who have mental disabilities. The Department of Justice went after Louisiana's bar agency in 2014 on this basis.

50. There is a culture of intolerance for disability in the legal profession, and that rose as high as the U.S. Supreme Court. That is why the ADA Amendments Act of 2008, passed unanimously in both houses of Congress, overturned several Supreme Court decisions narrowing the reach of the ADA.

51. The intolerant and vile *Buck v. Bell* case is still on the books. People with disabilities were sterilized and later killed in the Nazi Holocaust. 6 years before the Nazi terror started, the U.S. Supreme Court was encouraging American states to sterilize disabled people. How long must it go on?

52. I want this enrollment information for myself and for others. I also intend to push for more accessibility in the ABA. The ABA's own GOAL-III report shows that there are very few people with disabilities in ABA leadership. I have joined the ABA since initiating this case, and joined the Section of Legal Education and Admission to the Bar. I plan to continue providing input on such matters.

53. People with disabilities need lawyers with disabilities. The passages need to be opened.

54. I asked for this change from the ABA before I ever came to federal court. This litigation can end now with the simple addition of one data point on the Form 509 so people with disabilities can make the comparisons they need to make.

55. So they can watch which schools improve over time, as women and minority students have done for decades.

I, Plaintiff Andrew U. D. Straw, verify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the above statements and factual representations are true.

Respectfully submitted,

*/s/ Andrew U. D. Straw*

ANDREW U. D. STRAW
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333
Fax: (877) 310-9097
andrew@andrewstraw.com

December 20, 2014

10

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that I filed the above RESPONSE with the Court via its electronic CM/ECF system on December 20, 2014, and that electronic CM/ECF system will serve the RESPONSE on all counsel of record and *pro se* parties.

    Respectfully submitted,

    */s/ Andrew U. D. Straw/*

    ANDREW U. D. STRAW
    1900 E. Golf Rd., Suite 950A
    Schaumburg, IL 60173
    Telephone: (312) 985-7333
    Fax: (877) 310-9097
    andrew@andrewstraw.com