UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW U. D. STRAW,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN BAR ASSOCIATION,<br><br>Defendant. | No. 14 C 5194<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Andrew Straw, a person who has "mental and physical disabilities," R. 53 ¶ 2, alleges that the American Bar Association (the "Bar Association") discriminates against him based on his disabilities by failing to collect information from the law schools it accredits regarding the number of students with disabilities the schools admit. *See* R. 53. Straw alleges that the Bar Association's failure to collect this information and make it publicly available violates the Americans with Disabilities Act ("ADA") by preventing him from making an informed decision regarding what law schools admit would be most accommodating to his desire to attend law school to write a Ph.D dissertation about disability discrimination in law school admissions. *Id.* The Bar Association has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Straw lacks standing and has failed to state a claim. R. 60.[1] For the following reasons, the motion is granted.

---

[1] The Court considers the Bar Association's motion challenging standing pursuant to Rule 12(b)(6) as a challenge to the Court's subject matter jurisdiction even

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss any claim over which the Court lacks subject matter jurisdiction "at any time." *See* Fed. R. Civ. P. 12(h)(3). "Facial challenges [to subject matter jurisdiction] require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (emphasis in original); *see, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support a claim."). "The party asserting federal jurisdiction bears the burden of demonstrating its existence." *Farnik v. F.D.I.C.*, 707 F.3d 717, 721 (7th Cir. 2013).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp.*

---

though the Bar Association did not move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). This is appropriate because "standing implicates subject matter jurisdiction," *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014), and "federal courts have an independent obligation at each stage of the proceedings to ensure that they have subject matter jurisdiction over the dispute," *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013). Thus, the Court's dismissal of Straw's case is based on a lack of subject matter jurisdiction because Straw has failed to adequately allege that he has standing.

*v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

Straw is an attorney who practices disability rights law. R. 53 ¶ 4. He earned his J.D. from Indiana University in 1997. *Id.* ¶ 8. He suffers from bipolar disorder and injuries from being hit by a car. *Id.* ¶ 2. He has brought a number of actions challenging disability discrimination in state and federal courts and administrative agencies. *Id.* ¶ 6.

Straw alleges that "[d]iscrimination in law school admissions is universal." *Id.* ¶ 13. In support of this allegation, Straw cites a "consent agreement" the Law School Admissions Council—the entity responsible for administering the Law School Admission Test, or LSAT—signed with the U.S. Department of Justice

3

regarding "flagging" of LSAT scores for people with disabilities. *Id.* Straw "wish[es] to write a dissertation and obtain a Ph.D. with [the] topic to be: discrimination on the basis of disability in law school admissions and state supreme court rules of admission and discipline, to cover all 50 states." *Id.* ¶ 10. Straw originally sued "the top 50 law schools, [as determined by] U.S. News & World Report," *id.* ¶ 15, but voluntarily dismissed them from the lawsuit (after several schools had filed and briefed motions to dismiss), because "[i]f the [Bar Association] mandates" that the schools provide the information Straw seeks "it will be unnecessary to get injunctions against individual schools." *Id.* ¶ 40.

The Bar Association is a voluntary professional membership organization. The Bar Association's Council of the Section of Legal Education and Admissions to the Bar (the "Council") has been approved by the U.S. Department of Education as the national agency for the accreditation of programs that confer the J.D. degree. The Council promulgates Standards that provide "the requirements a law school must meet to obtain and retain [the Bar Association's] approval." R. 61-1 at ix. Standard 509, in particular, requires law schools to "publicly disclose on its website . . . admissions data." *Id.* at 35; R. 53 ¶ 22. Standard 509 does not require law schools to collect or disclose information about students' disabilities. R. 53 ¶ 23.

Straw alleges that he "sought to know which law school was admitting the highest percentage of its class with disabilities, because [his] work is very sensitive and [he] wanted a school that is not discriminating as much as the others." *Id.* ¶ 14. Straw alleges further that because Standard 509 does not require law schools to

4

collect information about students' disabilities, "it affected [his] ability to choose a school that discriminates less," which was important to him because he has "mental and physical disabilities . . . and [he is] studying this phenomenon." *Id.* ¶ 21. Straw alleges that he "asked" the Bar Association "to adjust its 509 form to include disability statistics in class information," and the Bar Association refused. *Id.* ¶ 24. According to Straw, the "refusal injured [him], since [he] seek[s] to do [his] Ph.D. at a school that publishes this information to reduce the chance of discrimination to [himself] and others." *Id.* ¶ 25. Straw "believe[s] that not providing the information [he] requested creates an *information barrier* to admissions for [himself] and to [his] doctoral work." *Id.* ¶ 31 (emphasis in original). Straw seeks "injunctive relief to mandate that the [Bar Association] will immediately include disability statistics about law students classes on its Standard Form 509. [The Bar Association's] mandatory reporting system makes it a private entity serving very public purposes, and the civil rights information is absolutely vital going forward." *Id.* ¶ 50.

Straw argues that the Bar Association's failure to require law schools to report how many people with disabilities they admit violates Title III of the ADA which prohibits discrimination on the basis of disability in providing access to "public accommodations." *See* 42 U.S.C. § 12182(a). The Bar Association argues that Straw's complaint should be dismissed for three reasons: (1) Straw has suffered no injury and lacks standing; (2) the Bar Association is not a "public accommodation"; and (3) the Bar Association is not discriminating against Straw. *See* R. 61 at 2.

5

## Analysis

### I. Standing

The Bar Association contends that Straw alleges that "he wishes to obtain a Ph.D. degree, that he wishes to research issues related to discrimination against disabled students in law school admissions as part of his Ph.D. studies, and that he seeks information so that he can determine what school would be most favorable for this research." R. 61 at 5. The Bar Association argues that these allegations are insufficient to "establish[] that he suffered an 'injury in fact.'" *Id.*

The United States Constitution provides that the "judicial power shall extend to all cases . . . arising under this Constitution, the laws of the United States, and . . . to controversies to which the United States shall be a party . . . [and] to controversies [between diverse parties]." Art. III, Sec. 2. The Supreme Court has interpreted this clause to require that the "party invoking federal jurisdiction bears the burden of establishing [the following]: (1) the plaintiff must have suffered an 'injury in fact'—that is, 'an invasion of a legally protected interest which is (a) concrete and particularized,' and (b) actual or imminent, not conjectural or hypothetical; (2) 'there must be a causal connection between the injury and the conduct complained of' (i.e., the injury must be fairly traceable to the challenged action of the defendant); and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Sierra Club v. U.S. E.P.A.*, --- F.3d ---, 2014 WL 7146652, at *3 (7th Cir. Dec. 16, 2014) (quoting *Lujan*, 504 U.S. at 560-61). Further, while Congress "'may not lower the threshold for

standing below the minimum requirements imposed by the Constitution,' . . . Congress does have the power to 'enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.'" *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (quoting *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 294 (7th Cir. 2000), and *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)); *see also Lujan*, 504 U.S. at 572 n.7 ("There is this much truth to the assertion that 'procedural rights' are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.").

A. **Injury-In-Fact**

Straw alleges that the Bar Association's failure to collect and publicize statistics about law school admissions of people with disabilities "harmed [him] as a prospective doctoral student in seeking a university that discriminates less," R. 53 ¶ 38, and thus "will be more supportive of [his] work, and less likely to undermine [his] work." R. 53 ¶ 21. The Seventh Circuit has held, however, that the "mere desire for information is not cognizable without a corresponding injury-in-fact." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of the City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013). In *Milwaukee Police*, a police union, together with an individual police officer, sued a municipal board responsible for certifying new police officers. The plaintiffs sued the board over a delay in certifying the individual officer, which eventually lead to her termination. As part of the litigation, the

7

plaintiffs asked the Seventh Circuit to certify questions to the Wisconsin Supreme Court regarding the extent of the municipal board's legal authority and responsibilities. The individual officer settled, leaving the police union to pursue the certification questions, alleging that "it stood to benefit from knowing how the law limits the [municipal board's] powers." *Id.* at 928. The Seventh Circuit held that although the police union might "benefit" from possessing that knowledge, a lack of this information did not constitute an "injury-in-fact." *Id.*

Similarly, Straw has alleged that he will benefit from knowing which law schools admit the most students with disabilities. But he does not allege that he has been *harmed* by not having this information. He does not allege that he has been prevented from applying to law school Ph.D. programs. He does not allege that he has applied to Ph.D. programs and been denied admission due to his proposed dissertation topic. He does not allege that he has been admitted to a Ph.D. program and been prevented by law school faculty from researching discrimination in law school admissions. Straw's failure to allege that he has actually attempted to apply to Ph.D. programs and been denied admission, or been admitted and denied the opportunity to study discrimination, makes his allegation of harm conjectural and hypothetical, not imminent. Such allegations are insufficient to establish an injury-in-fact.

B. **Causal Connection**

Additionally, even if Straw had been denied the opportunity to study discrimination in law school admissions (either by being denied permission to write

8

a particular dissertation or denied admission in the first place), he cannot allege that the Bar Association's failure to require law schools to publish admission statistics for people with disabilities caused this alleged harm. Absent "a causal connection between the injury and the conduct complained of (i.e., the injury must be fairly traceable to the challenged action of the defendant)," *Sierra Club*, 2014 WL 7146652, at *3, Straw cannot show standing. Straw hopes that the information he seeks will enable him to identify law schools that are more likely to be friendly to his research interests. This assumes that law schools that engage in discrimination in their admissions processes are more likely to deny him the opportunity to study discrimination in law school admissions. But even if this assumption is true, Straw has not explained how having the statistics he seeks would increase his chances of admission. On Straw's own theory of the case, it is not the Bar Association's failure to collect and publicize statistics about law school admissions of people with disabilities that would allegedly prevent him from being admitted to a Ph.D. program; rather, it is discriminatory practices of the schools' admissions processes. Straw has not alleged any connection between his *possession* of the statistics and an increased chance that he will be admitted to a Ph.D. program. This lack of a causal connection between the Bar Association's actions and Straw's alleged harm demonstrates that Straw lacks standing.

### C. Likelihood of Redress

Relatedly, contrary to Straw's allegations, the information he seeks would not enable him to identify law schools that are more likely to admit him and permit him

9

to study discrimination in law school admissions. In order to have standing to bring his claim, Straw's allegations must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Sierra Club*, 2014 WL 7146652, at *3. The statistics Straw seeks would show which law schools admit more people with disabilities. Straw believes that such law schools will also be more sympathetic to his research interests and therefore more likely to admit him. This is a reductive inference and is entirely speculative. There are any number of reasons that people are accepted and rejected from law schools and graduate programs. Generally, doctoral programs admit students with interests similar to those of the school's faculty. The fact that a school does not discriminate against people with disabilities (or at least discriminates less than other schools) does not necessarily mean that the faculty at that school would be interested in working with a student interested in researching law school discrimination. It is just as likely that the faculty at a school that admits a significant number of people with disabilities do not study discrimination law. Straw's allegations—based on the questionable assumption that schools that admit more people with disabilities must also be interested in studying discrimination—show that it is entirely speculative whether the statistics he seeks would actually redress the alleged harm he has identified. The conjectural nature of Straw's theory of redress also shows that he lacks standing.

Furthermore, law school and graduate school applications do not require applicants to state whether they are disabled. Absent such information, law schools

necessarily admit students without knowing whether the applicant is disabled. Straw alleges that LSAT scores achieved by people who required disability accommodations were once flagged. But Straw also alleges that this practice has ceased. In any event, not every person with a disability would require a disability accommodation in order to take the LSAT. Whether a LSAT-taker required an exam accommodation would depend on the nature of their disability.

Since law schools do not necessarily have knowledge of an applicant's disability, statistics showing the number of people with disabilities admitted by law schools do not reveal anything Straw's chances of admission. And since the statistics Straw seeks do not shed on this issue, that information would not address his desire to learn which schools would be more accommodating to his research interests. Straw lacks standing to bring his claim because even if the Court were to grant the relief Straw seeks, it would not redress the harm he alleges.

### D.  Statutory Standing

Even absent an injury-in-fact, Straw could have standing if he has a right to the information he seeks under a federal statute. In *Bensman v. U.S. Forest Service*, the Seventh Circuit reviewed a number of cases holding that "informational deprivations" can be "sufficient to constitute Article III injuries in fact in causes of action brought" pursuant to federal statutes that require disclosure of information under certain circumstances. 408 F.3d 945, 955-56 (7th Cir. 2005); *see also* Evan Tsen Lee and Josephine Mason Ellis, *The Standing Doctrine's Dirty Little Secret*, 107 Nw. U. L. Rev. 169, 187-203 (2012) (discussing federal statutes that permit

11

suits for "informational injury"). In *Bensman* in particular, the plaintiff alleged an "informational injury" based on the Forest Service's failure to provide him accurate information regarding the opportunity to appeal an administrative decision. The Seventh Circuit, however, found that the plaintiff did not have standing because the statute at issue—the Appeals Reform Act—did "not guarantee public access to agency documents or other specific information." *Id.* at 960.

Straw brings his claim under Title III of the Americans with Disabilities Act, which prohibits discrimination in "public accommodations." *See* 42 U.S.C. § 12182(a). But the only federal statute or regulation Straw cites that references "information" is the "Findings" section of the Rehabilitation Act, which provides that "the goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to . . . make *informed* decisions . . . ." 29 U.S.C. § 701(a)(6) (emphasis added). Straw argues that "the [Bar Association] violates either Title III or Title II or Title V of the ADA, of the implementing regulations, or the Rehabilitation Act, or some combination of them when it refuses to provide this data," R. 62 ¶ 29, and contends that "[i]nformation barriers are covered under the ADA and the Rehabilitation Act." *Id.* ¶ 3.

Straw's complaint does not include a claim under the Rehabilitation Act, but to the extent that Straw has made a claim under the Rehabilitation Act, or that the language in 29 U.S.C. § 701(a)(6) is relevant to interpreting the ADA, the reference to "providing individuals with disabilities with the tools necessary to . . . make informed decisions" does not have the broad implication Straw hopes. Straw cites

12

this language as authority that the ADA provides people with disabilities with a general right to information that might assist them in living with their disability. The provision Straw cites, however, is part of the Congressional Findings justifying passage of the statute, which "cannot substitute for the operative text." *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 553 U.S. 33, 47 (2008). Moreover, even in the operative text itself, the phrases "informed decisions" or "informed choices" are not used to create a general right to information as Straw would have it. Rather, every time these phrases are used in the Rehabilitation Act it is in reference to ensuring appropriate vocational training for people with disabilities. *See, e.g.*, 29 U.S.C. § 705(2)(B) ("informed choice" included in the definition of "assessment for determining eligibility and vocational rehabilitation needs"); 29 U.S.C. § 711(d)(2) ("including studies in the areas relating to providing informed choice in the rehabilitation process"); 29 U.S.C. § 721(19) ("assist the applicants and individuals in exercising informed choice throughout the rehabilitation process"). The construction of the Rehabilitation Act belies Straw's claim that the statute creates a general right to information like the admission statistics Straw seeks. Straw has not cited any authority beyond the Rehabilitation Act's Congressional Findings to support his assertion that a general right to information is provided by the ADA or the Rehabilitation Act. Since Straw has failed to cite competent authority to support his theory of standing, his claim must be dismissed.

## II. Failure to State a Claim

Alternatively, even if Straw had standing to bring his claim (which he does not), he has failed to state a claim under the ADA. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Straw has failed to allege that the Bar Association has denied him *access* to any of the "goods, services, facilities, privileges, advantages, or accommodations" it offers. Instead, Straw alleges that the Bar Association fails to provide him certain information that he personally believes would be helpful to his desire to find a Ph.D. program that would accommodate his interest in studying discrimination in law school admissions. The ADA, however, "does not require a public accommodation to alter its inventory to include accessible or special goods with accessibility features that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307(a) (2015). As the Seventh Circuit has put it, the "common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated." *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999). Straw asks the Court to force the Bar Association to provide a certain service that Straw alleges would be helpful to him as a person with disabilities. Contrary to Straw's argument, however, the ADA does not consider the

Bar Association's failure to accommodate Straw's request to be discriminatory. Thus, Straw has failed to state a claim under the ADA.

The Bar Association also argues that Straw has failed to state a claim because the Bar Association is a membership organization and "membership organizations are not among the 'places of public accommodation' recognized under the ADA." R. 61 at 9. The Bar Association cites the ADA's definition of "public accommodation" and notes that "membership organizations" are not included in this "exhaustive" list. R. 61 at 8 (citing 42 U.S.C. § 12181(7)(A)-(L)). But the Supreme Court has held that the list should be "construed liberally," *see PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-77 (2001), and any services the Bar Association provides to the public at large could be said to enable the Bar Association to "fit comfortably" under the statute's definition of "other service establishment[s]." *See id.*

Furthermore, that the Bar Association may not offer its services at a "physical site," such as a store, does not mean that it cannot be a public accommodation for purposes of the ADA. *See Morgan v. Joint Admin. Bd., Retirement Plan of the Pillsbury Co. and Am. Fed. of Grain Millers*, 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and

15

services. What matters is that the good or service be offered to the public.") (internal citations omitted).

In support of its argument that it is not a public accommodation, the Bar Association relies on *Welsh v. Boy Scouts of America*, in which the Seventh Circuit held that the Boy Scouts were not a public accommodation for purposes of Title II of the Civil Rights Act, such that the Boy Scouts were not required to admit a member who would not affirm his belief in God. 993 F.2d 1267 (7th Cir. 1993). The court also implied that the exclusion of membership organizations from the definition of "public accommodation" applied equally to Title III of the ADA. *Id.* at 1280. The holding in *Welsh* is inapposite here, however, because it was limited to the Boy Scouts's right to determine its members. Despite this exclusion of membership organizations from the definition of "public accommodation" for purposes of access to membership, membership organizations can be public accommodations if they provide goods or services to the public apart from the privileges of membership. *See Ganden v. Nat'l Collegiate Athletic Ass'n*, 1996 WL 680000, at *10 (N.D. Ill. Nov. 21, 1996) (allegation that the NCAA was a public accommodation despite being a membership organization was sufficient because the NCAA controlled access to athletic facilities). The Bar Association's arguments fail to address whether it might qualify as a "public accommodation" in this aspect.

In any event, it is unnecessary to the disposition of this motion for the Court to reach the issue of whether the Bar Association is a "public accommodation" because Straw has not alleged that the Bar Association discriminates against him.

16

Even if the Bar Association is a "public accommodation," Straw must allege that it discriminates against him by denying him access to goods or services it provides to the public at large in order for Straw to adequately allege that the Bar Association has violated the ADA. As discussed above, it is Straw's failure to adequately make such allegations that is fatal to his claim, regardless of whether the Bar Association is a public accommodation.

**Conclusion**

For the foregoing reasons, the Bar Association's motion to dismiss, R. 60, is granted. Because the Court dismisses Straw's complaint for lack of standing, it is dismissed without prejudice. *See Ramsay v. Mayer*, 420 Fed. App'x 586, 588 (7th Cir. 2011) ("If plaintiffs indeed lack standing, and there is no jurisdiction, then dismissal must be *without* prejudice; a court cannot adjudicate a claim over which it lacks jurisdiction.") (emphasis in original).

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: February 11, 2015